ORIGINAL

Case 4:09-cv-00393-Y   Document 18   Filed 07/20/10   Page 1 of 14   PageID 58
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUL 20 2010
CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JANIE SUE SLACK | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:09-CV-393-Y |
| | § | |
| MICHAEL J. ASTRUE | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

The plaintiff, Janie Sue Slack ("Slack"), filed an application for Title II disability insurance benefits ("DIB") on April 16, 2007, alleging a disability onset date of May 2, 2003. (Transcript ("Tr.") 49-56, 84.)[1] Her application was denied at the initial level of administrative review and again on reconsideration. (Tr. 9, 42.) Slack timely requested a hearing before an administrative law judge ("ALJ"), and a hearing was held in Fort Worth, Texas before ALJ William Helsper on August 12, 2008. (Tr. 15.)

In her April 2007 application, Slack claimed disability due to a number of impairments, including degenerative disc disease, arthritis, fibromyalgia, and heart stents. (Tr. 49-56, 84.) On

---

[1] The relevant time period for Slack's application is May 2, 2003, her alleged onset date, through December 31, 2007, her last insured date. (Tr. 30-31.) Thus, Slack must establish disability on or before December 31, 2007 in order to be entitled to a period of disability or DIB. *See* 20 C.F.R. § 404.131.

November 24, 2008, the ALJ issued a decision finding that she was not disabled. (Tr. 9-14.) The Appeals Council denied Slack's request for review on May 8, 2009. (Tr. 1-4.) Slack subsequently filed the instant action in federal court on July 6, 2009. (doc. #1.)

## II. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional

capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley,* 197 F.3d at 198; *see also Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994). If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart,* 276 F.3d 716, 718 (5th Cir. 2002). A denial of benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000). The Court must, however, carefully scrutinize the record to determine if the evidence is present.

### III. ISSUE

Slack contends that the ALJ's decision at the fourth step of the sequential evaluation process, that Slack could perform her past relevant work as a dispatcher and as a clerk/typist, is unsupported

by substantial evidence because the ALJ did not include all of Slack's limitations in the hypothetical he presented to the vocational expert ("VE").

## IV. ADMINISTRATIVE RECORD

### A. Background and Vocational History

Slack was born on April 1, 1948, making her 60 years old at the time of her hearing before the ALJ. (Tr. 1,14.) She has a high school diploma, and she completed one year of college. (Tr. 18.) Her past relevant work includes jobs as a dispatcher, an inventory clerk, a clerk/typist, and a truck driver. (Tr. 25.) Slack had not engaged in substantial gainful activity from May 2, 2003 through the date of the ALJ's decision. (Tr. 11, citing 20 C.F.R. § 404.1571 *et seq.*)

### B. Relevant Treatment History[2]

On March 13, 2006, a myelogram performed at Baylor All Saints Medical Center ("Baylor") revealed that Slack had "a large left paracentral disc extrusion resulting in severe central stenosis, with compression and deformity of the spinal cord." (Tr. 162-63.) The test also revealed mild left foraminal stenosis, mild right lateral recess, mild central stenosis, and lumbar facet arthropathy at L4-5 and L5-S1 with very minimal L4 anterolisthesis. (Tr. 163.) The myelogram showed that Slack had "no significant foraminal or central stenosis" in the lumbar spine. (*Id.*) On October 4, 2006, Dr. Stephen Bishop, D.O. ("Bishop"), Slack's treating physician since May 2002, noted that Slack had problems walking. (Tr. 136, 234.) He later prescribed her a scooter for mobility due to severe osteoarthritis and a failed back surgery. (Tr. 133.) During the relevant time period, Bishop's notes reveal that Slack presented on three occasions with complaints concerning her hands. On December

---

[2] The summary of Slack's medical history focuses on information related to Slack's use of her legs and hands. Slack has various other impairments, but a review of those is unnecessary because she has not challenged the Commissioner's assessment as it relates to any of those impairments.

29, 2005, she complained of numbness in both hands and elbow pain, and Bishop diagnosed her with osteoarthritis in her hands and tennis elbow. (Tr. 241.) On October 4, 2006, she complained of hand numbness. (Tr. 234.) And on January 31, 2007, Slack presented complaining of joint pain in her third digit, and Bishop diagnosed her with tenosynovitis, noting that he planned to refer her to a "Dr. Hull." (Tr. 232.)

During a consultative examination for disability evaluation on September 6, 2007, Dr. Juan Satis, M.D., ("Satis"), noted that Slack was obese, that she walked slowly because she limped from her pain, that she used a cane for better balance, but that she was able to walk without the cane with mild limping. (Tr. 215-17.) He also said that Slack was able to partially squat and that she could bend forward and reach her fingers to her ankles. (Tr. 217.) Additionally, Satis found that Slack had normal grip strength in both hands. (*Id.*)

On December 23, 2008, almost a year after Slack's last insured date, her attorney submitted an undated "Residual Functional Capacity Questionnaire" Bishop had completed to the Appeals Council, in which Bishop indicated that Slack had reduced grip strength. (Tr. 135-37.) But there is no indication that Bishop's assessment of her grip strength was made during the relevant time period.

C.  Administrative Hearing

At her hearing before the ALJ, Slack was represented by an attorney. (Tr. 17-27.) Vocational expert Carol Bennett ("Bennett"), also testified. (*Id.*) Slack testified that she last worked as a dispatcher for a moving company in 2004, concurrently working inventory during part of that time. (Tr. 18.) Before that, Slack said she worked as a clerk from January to April 2002. (Tr. 19.) She testified that arthritis in her hands made them very stiff, and that she had a finger that she

sometimes could not open for hours after getting out of bed. (Tr. 20.) Slack testified that she watched television during the day and tried to stay comfortable. (Tr. 21.) She said that she had gained 150 pounds over a three-year period because she was no longer able to walk for any distance. (*Id.*) But she testified that she tried to swim in the pool in her back yard as often as she could when her husband was home to help her. (*Id.*) Slack testified that she used a mobility scooter, and she would use the scooter if she accompanied her husband grocery shopping. (Tr. 22.) Slack said that she was currently seeing a physician, Bishop, who gave her prescriptions, including pain medication, arthritis medication and heart medication. (*Id.*)

Slack also testified that she had problems holding objects because of carpel tunnel in both hands, and that she was treated by an orthopedic doctor, Dr. Hull, for the condition. (Tr. 23-24.) The ALJ commented that there was no notation in any of her medical records about her having carpel tunnel. (Tr. 24-25.)

The VE testified next, and she defined the exertional demands and the skill requirements of Slack's previous jobs. She defined an inventory clerk as medium work, semi-skilled, specific vocational preparation ("SVP")[3] four. She defined a service order dispatcher as sedentary, semi-skilled, SVP four, and a clerk/typist as sedentary, semi-skilled, SVP four. Finally, she defined a truck driver as medium work, semi-skilled, SVP four. (Tr. 25.)

The ALJ asked the VE to assume an individual of 60 years of age, high school educated, with past relevant work as described, who had the residual functional capacity ("RFC") for sedentary

---

[3] The SVP level refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a particular occupation. *See* Dictionary of Occupational Titles app. C (rev. 4th ed. 1991). Unskilled work usually requires less than thirty day training, which corresponds to an SVP level of 1 or 2; semi-skilled work corresponds to an SVP level of 3 or 4; and skilled work requires an SVP level of 5 or higher. Social Security Ruling 00-4p. *See generally* 20 C.F.R. §§ 404.1568, 416.968.

work with the further freedom to occasionally change positions from sitting to standing at her worksite. (Tr. 25-26.) He then asked the VE whether she thought such an individual could perform any of Slack's past relevant jobs. (Tr. 26.) The VE responded that such an individual could perform the job of dispatcher and also as clerk/typist, although she would have to sit for a long period to complete a task. (*Id.*)

C. The ALJ's Decision

In entering his decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 9-14); 20 C.F.R. § 416.1520(a). At step one, the ALJ determined that Slack last met the insured status requirements of the Social Security Act on December 31, 2007. (Tr. 10-11.) He also found that she had not engaged in substantial gainful activity since May 2, 2003. (*Id.*, citing 20 C.F.R. § 404.1571 *et seq.*)

At step two, the ALJ determined that Slack had the following severe impairments: obesity, polyarthritis, back pain, status post T11-12 discectomy, and a history of coronary artery disease. (Tr. 11, citing 20 C.F.R. § 404.1521 *et seq.*)

The ALJ then found that Slack did not have an impairment or combination of impairments that met or equaled a listing at step three of the disability analysis. (Tr. 12, citing 20 C.F.R. §§ 404.1525 and 404.1526). (Tr. 12.) The ALJ determined that there was "no evidence of findings on appropriate medically acceptable imaging of any significant abnormality of the right hip or knees and no evidence of motor or reflex loss, due to herniated disc or degenerative disease." (*Id.*) He also noted that the State Agency medical consultants determined that Slack's impairments did not meet the requirements of any of the listed impairments. (*Id.*) And he noted that there was no evidence

in the record that any treating or examining physician had "mentioned findings equivalent in severity to the criteria of any listed impairment." (*Id.*)

The ALJ then formulated an RFC for Slack, finding that, "through the date last insured, the claimant had the residual functional capacity to perform *sedentary* work as defined in 20 C.F.R. § 404.1567(a) except that the claimant requires a sit/stand option or the freedom to alternate between sitting and standing at the worksite." (Tr. 12.) At step four, the ALJ found that Slack was "capable of performing her past relevant work as a service order dispatcher and as a clerk typist." (Tr. 13.) He also found that such work would not require Slack to perform work-related activities precluded by her RFC. (*Id.*, citing 20 C.F.R. § 404.1565.) Ultimately, the ALJ concluded that Slack was not disabled within the meaning of the Act at any time from the alleged date of onset through the date of the decision. (Tr. 14.)

## V. DISCUSSION

The sole issue before the Court is whether the ALJ's decision is supported by substantial evidence. (Plaintiff's Brief ("Pl. Br.") at 4-7.) Specifically, Slack complains that the ALJ's decision is not supported by substantial evidence because he failed to include all of Slack's limitations in the hypothetical he presented to the VE. (*Id.* at 4.) According to Slack, the sit/stand option limitation contained in the RFC the ALJ formulated for her was not identical to the limitation he presented to the VE. (*Id.*)

She also complains that neither the RFC he formulated nor the hypothetical he presented to the VE contained the specific limitations found by the State Agency medical consultants. (*Id.*) Specifically, State Agency medical consultant Patty Rowley, M.D. ("Rowley") examined Slack and

found that she could sit for six hours in an eight hour day and that her ability to stand and/or walk was limited to slightly less than two hours in an eight hour work day. (Tr. 222.)

An ALJ is ultimately responsible for determining a claimant's RFC. *See Villa v. Sullivan*, 895 F.2d at 1019, 1023 (5th Cir. 1990). But the ALJ must consider and weigh all medical opinions in the record, even opinions on issues like RFC that are reserved to the Commissioner. *Price v. Astrue*, 572 F. Supp.2d 703, 710 (N.D. Tex. 2008); 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). Here, the ALJ's decision clearly indicates that he considered the opinions of the State Agency medical consultants. (Tr. 13.) He found that their opinions were "well supported and consistent with the record as a whole," and he indicated that he gave them "great weight." (Tr. 13.) The ALJ is not, however, bound by the findings made by the State Agency medical consultants, and he is not required to adopt their opinions in full. *See* Social Security Regulation 96-6p, 1996 WL 374180, *2). Moreover, Slack has failed to demonstrate that the difference between the sit/stand option included in the RFC assessment of the State Agency and the sit/stand option included in the ALJ's RFC affects the outcome of his decision.

Slack also complains that the ALJ did not present the identical sit/stand limitation in the hypothetical he presented to the VE as was incorporated into the RFC he formulated. (Pl. Br. at 4-5.) In his RFC, the ALJ specifically stated that Slack retained the RFC to perform sedentary work except that she required "a sit/stand option or the freedom to alternate between sitting and standing at the worksite." (Tr. 12.) In his hypothetical to the VE, the ALJ said that the hypothetical individual had the RFC for sedentary work "with the further freedom to occasionally change positions from sitting to standing at her worksite." (Tr. 26.) But again, Slack has failed to demonstrate that the slight difference in the language the ALJ used affected the outcome.

Next, Slack complains that the ALJ improperly failed to include limitations pertaining to her use of a walking assistance device in either the RFC he formulated or in the hypothetical presented to the VE. (Pl. Br. at 5-6.) Social Security Regulation 96-9p addresses determining the capability for less than a full range of sedentary work. That section specifically provides that "if a medically required hand-held assistive device is needed *only* for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded." *Id.* (emphasis added). The record reflects that Slack used a cane, and that her treating physician, Bishop, prescribed a scooter to assist her with mobility. (Tr. 11, 133.) The ALJ considered both of these facts in making his determination. (Tr. 11.) Specifically, the ALJ noted that during a consultative physical examination with Satis which took place during September 2007, Satis noted that Slack used a cane for better balance when walking, but that she could walk without it with a mild limp. (Tr. 11, 217.) Thus, there is substantial evidence to support the ALJ's conclusion that Slack's need for an assistive walking device did not erode the sedentary occupational base.

Slack also complains that the ALJ did not include other exertional limitations in the hypothetical he presented to the VE, including occasional limitations in climbing, balancing, stooping, kneeling, crouching and crawling, as well as a total inability to use a ladder, rope, or scaffold. (Pl. Br. at 6.) But these limitations were found by the State Agency Physician, not the ALJ, and the ALJ clearly took a variety of physical limitations into account in limiting Slack to sedentary work and further limiting that range of work by including the requirement of a sit/stand option. (Tr. 12, 223.)

This analysis also applies to Slack's allegations that the ALJ did not include limitations reflecting the effects of Slack's obesity. (Pl. Br. at 6-7.) The ALJ accounted for her obesity by limiting her to the lowest level of work, sedentary work, and further including a sit/stand option for her comfort. (Tr. 12.) Furthermore, as the ALJ observed, there is no evidence in the record that any of Slack's treating physicians had placed any restrictions on her. (Tr. 13.) Thus, the Court finds that there is substantial evidence to support the ALJ's determination. *See, e.g., Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (affirming ALJ's determination that claimant's subjective claims were not credible where no examining physician stated that the claimant was disabled) (citations omitted).

Finally, Slack asserts that the ALJ improperly failed to include a limitation pertaining to her hands in either the RFC or in the hypothetical he presented to the VE. (Pl. Br. at 7.) The Court agrees with the Commissioner, however, that this assertion is without merit. (Defendant's Brief ("Def. Br.") at 7.) The ALJ noted in his decision that Slack had alleged that she had difficulty gripping with her hands due to carpal tunnel syndrome. (Tr. 11-12.) But he also noted that there was no evidence in the record reflecting that she had ever been treated for carpel tunnel. *Id.* Subjective complaints alone are not enough for an impairment to qualify as disabling. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (citations omitted). The record reflects that in September 2007, just four months prior to her last insured date, Slack demonstrated normal grip strength in both hands as well as a full range of motion in her upper extremities. (Tr. 12, 217.) And there is no medical evidence in the relevant time period corroborating Slack's subjective complaints.

An ALJ is not required to give subjective evidence precedence over objective evidence. *See Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988) (citations omitted). Rather, the ALJ's evaluation of the credibility of an individual's complaints of pain is used to resolve conflicts between

the subjective evidence and the medical evidence. *Id.* The record is clear that the ALJ considered a number of factors, including inconsistencies in the medical evidence, Slack's daily activities, her course of treatment, and her testimony at her hearing in determining that her subjective complaints were not credible to the extent she claimed. (Tr. 12-13.) Thus, he clearly indicated the credibility choices he made and the basis he used for making those choices. *See Hollis*, 837 F.2d 1378, 1385 (5th Cir. 1988); *see also* 20 C.F.R. § 404.1529 (ALJ will consider the extent to which claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence); Social Security Ruling 96-7p (discussing factors used in credibility determination). The ALJ's choice not to include a limitation in the RFC he formulated pertaining to Slack's hands is supported by substantial evidence.

Slack has failed to meet her burden of proof in the first four steps of the sequential evaluation process. *Crowley*, 197 F.3d at 198; *see also Greenspan*, 38 F.3d at 236. She has failed to show she was unable to perform her past relevant work during the relevant time period on a sustained basis. An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence also supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citations omitted). The ALJ's determination that Slack was capable of performing her past relevant work on a sustained basis is supported by substantial evidence.

## RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The Court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until August 10, 2010. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until August 10, 2010 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

**SO ORDERED.**
**July 20, 2010**

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

cak/JLC